Linda M. GONSALVES, Plaintiff,

v.

SUNSET LIFE INSURANCE COMPANY OF AMERICA, Defendant.

No. C–97–1567 WHO.

United States District Court, N.D. California.

April 5, 2001.

Stephen F. Heller, Paul Kozachenko, Gonsalves & Kozachenko, Fremont, CA, for Plaintiff.

Michael Hoffman, Littler Mendelson, San Francisco, CA, for Defendant.

## MEMORANDUM DECISION AND ORDER

ORRICK, District Judge.

In this diversity insurance action brought by plaintiff Linda Gonsalves ("Gonsalves") against defendant Sunset Life Insurance Company of America ("Sunset"), the parties have filed cross-motions for summary judgment. For the reasons set forth hereinafter, Sunset's motion is granted and Gonsalves' motion is denied.

I.

A.

On or about June 8, 1983, Sunset issued life insurance policy No. U0010774 ("the policy") to Michael J. Gygax ("Gygax"). (Hoffman Decl. Ex. 1 at D 00002.) The policy provided for death benefits in the amount of $500,000. (*Id.* at D 00003.)

Gygax and Gonsalves were married from 1987 to 1993. When Gygax and Gonsalves divorced, they resolved issues regarding their assets and debts by entering into a Marital Settlement Agreement and Property Settlement Agreement (jointly referred to as the "Settlement Agreement") in October 1992. The Settlement Agreement provides that:

> [Gygax] shall grant to [Gonsalves] the following security interest to secure his obligations to pay the Commercial Bank of Fremont credit line, the lease with Shapell Industries, the Fremont Bank car loan, the Dakota plane loan and the Manjo loan:
>
> . . . . .
>
> c. [Gygax] shall irrevocably designate [Gonsalves] as his beneficiary of his life insurance policies in an amount equivalent to the outstanding balances of the Commercial Bank of Fremont credit line, the lease with Shapell Industries, the Fremont Bank car loan, the Dakota plane loan, the Manjo loan and the Ralph and Joan Jepson loan on the LaSalle real property. The insurance companies will be required to provide [Gonsalves] with notice of proposed cancellation of any policy. [Gygax] shall maintain comprehensive insurance coverage on all said assets with [Gonsalves] named as a beneficiary thereon.
>
> d. [Gonsalves] shall promptly execute a reconveyance and/or release as appropriate for the security interest set forth [*sic*] herein when [Gonsalves] no

longer has any individual liability on the Commercial Bank of Fremont loan, the lease with Shapell Industries, the Fremont Bank car loan, the Dakota plane loan, the Manjo loan and the Ralph and Joan Jepson loan on the LaSalle real property.

(Hoffman Decl. Ex. 10 at 000108.) The Court will refer to the six debts itemized referred to above as the "Secured Debts."

On or about July 16, 1993, Gygax and Sunset entered into a Change of Beneficiary Agreement that provided, under the heading "Special Requests":

> Linda M. Gonsalves is the irrevocable beneficiary of Policy # U0010774, pursuant to Marital Settlement Agreement dated October 2, 1992. The beneficiary designation of this policy cannot be changed without written consent of Linda M. Gonsalves. Linda M. Gonsalves shall have the right to all information concerning this policy and Sunset Life shall provide any notice of proposed cancellation of this policy. Linda M. Gonsalves shall release this irrevocable designation upon satisfaction of the conditions set forth in the Property Settlement Agreement dated October 5, 1992.

(Gonsalves Decl. Ex. A, Change of Beneficiary Agreement.)

Gygax failed to pay the premiums required to keep the policy in force, and Sunset terminated the policy due to nonpayment of premiums on March 5, 1996. Sunset did not notify Gonsalves that the policy's coverage would cease on March 5, 1996.

On November 20, 1996, Gygax died in an airplane accident. The policy had not been reinstated before his death, and Gonsalves was not aware that the policy had lapsed.

On March 24, 1997, Gonsalves filed suit against Sunset in the Superior Court for

the County of Alameda for breach of contract, breach of the implied covenant of good faith and fair dealing, and for declaratory relief. The action was removed to this Court on April 29, 1997.

### B.

On April 1, 1998, the Court granted summary judgment for Gonsalves on her claim for breach of contract. The Court held that Gonsalves was entitled to the entire $500,000 policy benefit, because Sunset was barred by § 10113 of the California Insurance Code from looking beyond the terms of the policy to determine the amount of benefits to which Gonsalves was entitled under the Settlement Agreement. The Court also granted summary judgment for Sunset on Gonsalves' claim for breach of the implied covenant of good faith and fair dealing.

On March 30, 2000, the Ninth Circuit remanded this case for a trial to determine the damages Gonsalves incurred as a result of Sunset's breach of contract. The Ninth Circuit affirmed this Court's conclusion that Sunset breached a contract with Gonsalves by failing to give her notice that the policy was about to lapse due to Gygax's failure to pay the premium. The Ninth Circuit also affirmed summary judgment for Sunset on Gonsalves' claim for breach of the implied covenant of good faith and fair dealing. The Ninth Circuit reversed this Court's conclusion that Gonsalves was entitled to the entire $500,000 policy benefit, and rejected this Court's conclusion about the effect of § 10113: "California Insurance Code § 10113 does not stand in the way of measuring her loss by reference to the Property Settlement Agreement ... because § 10113 has to do with the "policy," while the dispute in this case has to do with the Change of Beneficiary Agreement." *Gonsalves v. Sunset*

*Life Ins. Co.,* 2000 WL 335565, at *7, 215 F.3d 1333 (9th Cir. Mar. 30, 2000).

The Ninth Circuit found that:

The Property Settlement Agreement grants Gonsalves a security interest to secure certain of Gygax's obligations by designating her as beneficiary of his life insurance policies "in an amount equivalent to the outstanding balances" of those obligations. Therefore, Gonsalves's entitlement to proceeds of the Sunset policy depends on (and is limited by) the balance on the loans secured[.]

*Id.* at *4. "If Gonsalves had been given notice of lapse as she should have been, had paid the premiums, and the policy had remained in force, she would be entitled to recover no more than the outstanding balance on the debts pursuant to the Marital Settlement Agreement and the Property Settlement Agreement (together with a refund of the premium and interest) because both her status as a beneficiary and the extent of her vested equitable interest in Gygax's policy stem from those Agreements." *Id.* at *6. The Ninth Circuit concluded that

a triable issue exists because the amount of the outstanding balance on the secured debts is unclear. If there is debt remaining that Gonsalves may be obliged to pay under the Property Settlement Agreement, she is entitled to recover that amount, plus premiums paid (in this case, of course, she paid none), plus interest.

*Id.* at *6–7. Accordingly, the Ninth Circuit remanded the case for a trial on damages only.

### II.

The Ninth Circuit has remanded this case solely for determination of the damages that Gonsalves has suffered as a result of Sunset's failure to give her notice that the policy was about to lapse. Gon-

salves argues that she is entitled to receive the total amount of the Secured Debts that was outstanding on the date of Gygax's death. Sunset argues that damages should be measured by whether Gonsalves has been required to pay any of the Secured Debts, and whether any of the Secured Debts remain outstanding such that Gonsalves could be required to pay them.

Gonsalves' argument is supported by the language of the Ninth Circuit's opinion, which noted that Gonsalves' interest in the policy benefits should be measured not by the face value of the policy, but by the outstanding balance on the Secured Debts at the time of Gygax's death, plus interest. *Gonsalves* at *5. Sunset argues that other language in the Ninth Circuit's opinion suggests that damages should be measured by whether any of the Secured Debts remain outstanding today. The Ninth Circuit opinion does state: "If there is debt remaining that Gonsalves may be obliged to pay under the Property Settlement Agreement, she is entitled to recover that amount, plus premiums paid (in this case, of course, she paid none), plus interest." *Id.* at *6–7. This reference to outstanding debt in the present tense must be read in the context of the remainder of the Ninth Circuit's Memorandum.

The Ninth Circuit found that "Gonsalves' deposition indicates that she would have paid the Sunset premium or made sure it was paid" if she had been notified that the policy was about to lapse. *Id.* at *3. The Ninth Circuit also found that

[i]f Gonsalves had been given notice of lapse as she should have been, had paid the premiums, and the policy had remained in force, she would be entitled to recover no more than the outstanding balance on the debts pursuant to the Marital Settlement Agreement and the Property Settlement Agreement (together with a refund of the premium

and interest) because both her status as a beneficiary and the extent of her equitable interest in Gygax's policy stem from those Agreements.

*Id.* at *6. Thus, the Ninth Circuit's opinion clearly assumes that the policy would have remained in effect were it not for Sunset's breach of its duty to Gonsalves.

Gonsalves has submitted California Supreme Court authority supporting her contention that her interest in the policy benefits vested on the date of Gygax's death. *See, e.g., Pimentel v. Conselho Supremo De Uniao Portugueza Do Estado Da California*, 6 Cal.2d 182, 186, 57 P.2d 131 (1936) ("[T]he rights of the beneficiary vest immediately upon the death of the insured[.]"). Thus, as the Ninth Circuit noted on page 5 of its decision, if the policy remained in effect, Gonsalves would have been entitled to recover ("the outstanding balance on the enumerated debts at the time of Gygax's death pursuant to the Property Settlement Agreement)," plus interest.[1] *Gonsalves* at *5 (citing *Jimenez v. Protective Life Ins. Co.*, 8 Cal.App.4th 528, 541, 10 Cal.Rptr.2d 326, 333–34 (1992)); *see also Curtiss v. Aetna Life Ins. Co.*, 90 Cal. 245, 256, 27 P. 211 (1891) (as policy benefits vest at the time of the insured's death, it is no concern of the insurer that the debts secured by the policy may have been paid by other parties after the insured's death). Any other rule, as Gonsalves correctly notes, would encourage insurers to delay payment of benefits indefinitely in the hope that someone else would pay off the debts and, thus, relieve the insurer of any liability.

Sunset argues that if Gonsalves is permitted to recover more than the currently outstanding amount of the Secured Debts, she will be receiving a windfall not contemplated by the Settlement Agreement. Sunset misreads both the Ninth Circuit's

---

1. Inexplicably, neither party refers to this lan- guage from the Ninth Circuit's Memorandum.

opinion and the California case of *Wells v. John Hancock Mutual Life Insurance Co.,* 85 Cal.App.3d 66, 149 Cal.Rptr. 171 (1978). The Ninth Circuit's opinion did state:

> an assignee's loss on account of a lapse that the insurer should have disclosed (but did not) is measured by the assignee's actual damages, not the face value of the policy. *See Wells v. John Hancock Mut. Life Ins. Co.,* 85 Cal.App.3d 66, 149 Cal.Rptr. 171, 176 (1978) (estoppel to deny full coverage would be "undeserved windfall" for assignee who must instead prove exact amount of loss).

*Gonsalves* at \*5. The statement was made, however, in the context of explaining why Gonsalves was not entitled to the full value of the policy, but was instead limited to the amount of the Secured Debts. Thus, paying Gonsalves the full $500,000 policy benefit would be a windfall because her interest in the policy was limited to the outstanding balance of the Secured Debts. Because her interest in the policy benefits vested at the date of Gygax's death, her "actual damages" caused by Sunset's failure to inform her of the lapse of the policy are equal to the amount of the Secured Debts at the date of Gygax's death. *Id.*

*Wells* is distinguishable. In *Wells,* the plaintiff had been assigned an insurance policy as security for certain loans she gave to the owner of the policy, but when the insurer received the assignment, the policy had already lapsed. *Wells,* 85 Cal.App.3d at 69, 149 Cal.Rptr. at 173. The court found that the insurer breached a duty to the plaintiff to inform her that the policy had already lapsed and thus was not valid security for the loans. *Id.* at 72, 149 Cal.Rptr. at 175. The court held that the plaintiff's damages should be measured by the "other, more adequate security" that she would have tried to obtain had she known the policy had no value as security. *Id.* at 74, 149 Cal.Rptr. at 176. Measuring her damages by the policy benefit would

have been a windfall because nothing the insurer did caused her to loan the money to the original policy owner. *Id.* Moreover, because the policy had already lapsed when the insurer received the assignment, nothing the insurer failed to do would have allowed the plaintiff to keep the policy in force.

The facts here are distinguishable because Gonsalves was assigned a valid policy that she could have kept in force had she been informed of the *impending* lapse. Thus, Gonsalves' actual damages should be measured by the policy benefits that she was deprived of, not by the value of other security that she could have obtained. Accordingly, the Court will look to evidence of the amount of the Secured Debts on the date of Gygax's death.

 Unfortunately for Gonsalves, however, she has not submitted any admissible evidence of that amount. Gonsalves submits only the declaration of Frank Gygax, who is Gygax's brother and one of the two co-executors of the Gygax estate. (Gygax Decl. ¶ 1.) Frank Gygax attests that at the time of Gygax's death, there was $163,600 outstanding on the Ralph and Joan Jepson loan on the LaSalle real property, and $31,232 outstanding on the Dakota plan loan. (*Id.* ¶ 2.) Sunset moves to strike this statement on the grounds that Frank Gygax could only have learned of the outstanding amount of these debts by reviewing documents or by speaking with other people. His failure to explain how he learned the outstanding amounts of the Secured Debts makes his conclusion lack any foundation. In addition, if he learned of the amount of the Secured Debts by speaking with other people, his testimony is inadmissible hearsay. If he learned of the amount from documents, his testimony is both inadmissible hearsay and violates the best evidence rule because he has not submitted copies of the documents he re-

lied upon with his declaration. Accordingly, the Court grants Sunset's motion to strike page 2, lines 13–14 and 16–24 of the Declaration of Frank Gygax. Without the Declaration of Frank Gygax, Gonsalves has no evidence of the amount of the Secured Debts that were outstanding on the date of Gygax's death.

Therefore, Sunset's motion for summary judgment on damages is granted.[2] The Court need not, and does not, rule on the numerous other arguments presented in the parties' motion papers.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Sunset's motion to strike page 2, lines 13 through 14 and 16 through 24 of the Declaration of Frank Gygax is GRANTED.

2. Sunset's motion for summary judgment for damages is GRANTED.

3. Gonsalves' motion for summary judgment for damages is DENIED.

4. This action is dismissed with prejudice.

---

**2.** If Sunset's contention is correct that damages should be measured by whether there is any outstanding balance on the Secured Debts today, summary judgment is still appropriate for Sunset because Gonsalves has not submitted any evidence, admissible or not, of the amount of the Secured Debts, if any, that remains outstanding today.